GEREN *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered May 15, 1911.

1. RAILROADS—DAMAGE BY RUNNING OF TRAIN—BURDEN OF PROOF.—In suits against a railroad company to recover damages done to property by the running of its trains, the burden of showing due care upon its part is cast upon the railroad company by virtue of the statute of this State (Kirby's Digest, § 6773) making railroad companies responsible for all damages done or caused by the running of their trains. (Page 228.)

2. INSTRUCTIONS—GENERAL OBJECTION.—In an action against a railroad company for injury to property by the running of a train, an instruction that "if you find *from a preponderance of the evidence* that the defendant company, by its agents, while operating its trains, negligently ran into or against plaintiff's wagon or team, and thereby injured or killed plaintiff's property, then you should find for the plaintiff such sum as will justly compensate plaintiff for such injury, if any is shown." *Held* that a general objection was insufficient to point out the error in using the word "preponderance." (Page 231.)

3. APPEAL AND ERROR—HARMLESS ERROR.—The Supreme Court will not reverse for an erroneous instruction if it appears that it could not have misled the jury. (Page 230.)

4. RAILROADS—LEAVING TEAM NEAR TRACK.—One who leaves his team of mules standing near to a railroad track should keep them in control on the approach of a train; and if he fails to do so, and they become frightened, and injury is caused thereby, he will be guilty of negligence barring a recovery unless the animals are frightened by some wanton or wilful act done by the railway employees. (Page 231.)

5. SAME—DUTY TOWARD TEAM LEFT NEAR TRACK.—A railroad company is not liable because animals left in close proximity to its tracks are frightened by the approach of the trains if there is no negligence in the operation of the train or in the failure to exercise due care to avoid the injury. (Page 232.)

Appeal from Sebastian Circuit Court, Fort Smith District; *J. S. Maples,* Judge on Exchange; affirmed.

*Winchester & Martin,* for appellant.

*Lovick P. Miles,* for appellee.

FRAUENTHAL, J. This was an action instituted by the plaintiff below against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for an alleged injury to his wagon and team done by the running of its train. The plaintiff

was engaged in the ice business in the city of Fort Smith, and owned an ice wagon and team of mules which he used in delivering the ice to his patrons. On February 19, 1909, his driver was engaged in delivering ice with this wagon and team to certain patrons who resided near the defendant's railroad track where it crossed C Street in said city. The driver crossed the track upon this street and left his wagon and team standing either near the edge of or a short distance from the side of this street, with the rear of the wagon about two feet from the railroad track, and proceeded to take the ice to the residence of a patron which was only a few yards distant from the track. The heads of the mules were turned somewhat in the direction of the depot.

About the time the driver had got out of the wagon, or, as some of the witnesses testified, just after he had delivered the ice to the patron and was returning to the wagon, the defendant's train approached from the direction of the depot. The testimony on the part of the defendant tended to prove that when he got to a point about one hundred yards from the wagon and team, the engineer observed them and saw that the mules were quiet and did not seem to be frightened, and that the wagon was at such a distance from the track that the train could safely pass it. The testimony tended further to prove that this engineer had passed wagons at this distance from the track on other occasions with safety, and that on this occasion he observed and watched the animals attached to the wagon for the entire distance from the time he could have first discovered them until the injury occurred, and that they appeared to be quiet and not frightened, and also that he used due care in the operation of the train. It also appears from the testimony on its part that the driver knew that trains were accustomed to pass on defendant's track at this place about this time, and that the mules were afraid of running trains; that he discovered the approach of the train when it was about one hundred yards distant, and went to the heads of the mules and attempted to hold them, instead of moving them away. As the train approached near to the wagon, and about the time the engine passed it, the mules backed the wagon against the moving train, resulting in the injury to the team and wagon.

The testimony on the part of the plaintiff tended to prove that the driver had just got out of the wagon and had gone to the

rear of the wagon to take out the ice when he discovered the approaching train, and that he at once took hold of the lines attached to the mules to hold them, and that he could not safely drive them away on account of the narrowness of the road or street between the track and the residence of the patron where he had stopped the wagon; that the mules became frightened about the time the train came in sight, and as the train approached nearer tried to turn back, and thereby threw the wagon around, so that the engine struck it and the mules, and greatly damaged them.

The trial resulted in a verdict in favor of the defendant, and the plaintiff has appealed from the judgment which was rendered thereon.

It is not insisted upon this appeal that there was not sufficient evidence to sustain the jury's verdict, but it is urged by counsel for plaintiff that the trial court committed errors in giving certain instructions to the jury, and in refusing to give others which were requested by the plaintiff.

The court gave the following instruction to the jury: "If you find from a preponderance of the evidence that the defendant company, by its agents, while operating its train, negligently ran into or against plaintiff's wagon or team, and thereby injured or killed plaintiff's property, then you should find for the plaintiff such sum as will justly compensate plaintiff for such injury, if any is shown." It is urged that this instruction is erroneous for the reason that it required the plaintiff to prove by a preponderance of the evidence that the defendant was negligent in the operation of its train, which caused the injury. It is insisted that the uncontradicted evidence shows that the damage to the property was caused by the defendant by the running of its train, and that therefore it was incumbent upon defendant to show that it was free from negligence. It is true that, in suits against a railroad company for a recovery of damages done to property by the running of its trains, the burden of proof of showing due care upon its part is cast upon the railroad company by virtue of the statute of this State making railroad companies responsible for all damages done or caused by the running of their trains. Kirby's Digest, § 6773; *Little Rock & Ft. Smith Ry. Co.* v. *Bain,* 33 Ark. 816; *Memphis & L. R. Rd. Co.* v. *Jones,*

36 Ark. 87; *St. Louis, I. M & S. Ry. Co.* v. *Vincent,* 36 Ark. 451;
*St. Louis & S. F. Rd. Co.* v. *Basham,* 47 Ark. 325; *Railway Co.* v.
*Taylor,* 57 Ark. 136; *Railway Co.* v. *Thomasson,* 59 Ark. 140.

In this case the uncontroverted testimony showed that the
injury to the property was caused by the running of the train,
and therefore it was technically erroneous to instruct the jury
that the plaintiff was required to prove by a preponderance of
the evidence that the defendant negligently ran its train into
plaintiff's wagon and thereby injured it. But it appears from
an examination of the entire trial and the instructions which
were asked by both parties that the sole issues which were sub-
mitted to the jury for its determination were whether or not the
defendant's employees were guilty of negligence in not discov-
ering that the team was frightened and thereafter in not stopping
the train in time to avoid the injury, and whether or not the
plaintiff's employee was guilty of contributory negligence. Upon
these issues the court gave specific instructions. The plaintiff
did not request the court to instruct the jury that, upon proof
being made of damage done by defendant to his property by the
running of its train, a *prima facie* case of negligence was made
out against the defendant, or that the burden was cast upon the
defendant to show due care upon its part in the operation of its
train after such damage was shown. This does not appear to
have been a proposition which was controverted in the trial of
the case. No doubt, if counsel had called to the attention of the
court the error in the use of the word "preponderance" in this
instruction, it would have omitted same therefrom; and with
such omission we think the instruction would not have been
erroneous. The use of this erroneous word in this instruction,
we think, under the circumstances of the trial of this case, called
for a specific objection, which was not made thereto. The plain-
tiff objected only generally to this instruction, and we think that
he cannot now complain by making this specific objection for
the first time in this court.

As to whether or not the defendant was guilty of negligence
which caused the injury, the court gave the following instruc-
tion, which specifically set out the acts which would constitute
such negligence:

"If you further find from the evidence that the plaintiff's

team was within range of the vision of the engineer or fireman whose duty it was to keep a constant lookout along the track, and that the defendant's agent observed the team within the range of his vision along said track and in close proximity thereto, and observed, or could have observed by the exercise of ordinary care, that the team was frightened or acting in a threatening manner (if you find they were frightened or acting in a threatening manner), and observed his condition at a sufficient distance from the train to have stopped the train by the exercise of ordinary care before the train ran into or against the wagon or team (if you find the train did negligently run into or against the wagon or team), then you should find for the plaintiff."

This instruction, if not erroneous or prejudicial, sufficiently presented to the jury the issue as to whether or not the defendant was guilty of negligence at the time of the injury, under the testimony in this case. It is urged that this instruction is erroneous for the reason that in the latter portion thereof it states in effect that the defendant's servant was guilty of negligence only in the event that he discovered the frightened condition of the mules at a sufficient distance from the train to have stopped the train by the exercise of ordinary care before the train ran into the wagon; and it is urged that this servant would also have been guilty of negligence if he might have observed this frightened condition at such distance, and did not do so, and that the instruction therefore should have also presented this phase of the case. But we think that, if there was any error in this omission from this instruction, it was not prejudicial. The uncontroverted testimony shows that the defendant's engineer observed the mules and their condition at a sufficient distance to have stopped the train with the exercise of ordinary care, and watched them from that point until the engine passed them. In the first part of the above instruction the court stated to the jury that if the defendant's agent "observed or could have observed by the exercise of ordinary care that the team was frightened or acting in a threatening manner (if you find that they were frightened or acting in a threatening manner)," then the defendant would have been guilty of negligence in failing to observe or note that the team was frightened; and, inasmuch as the uncontroverted testimony shows that he did observe the

mules during all the time from the moment that he could have
first discovered them until the injury, it necessarily follows from
the entire instruction that the jury understood that, if the mules
were frightened, then the engineer did discover their frightened
condition at the time when he first discovered them, or in time to
have stopped the train by the exercise of ordinary care. The
real question of fact involved under this instruction and the undis-
puted testimony was whether or not the mules were frightened,
and not whether the engineer either observed or could have ob-
served their frightened condition at a sufficient distance from
the train to have stopped same by the exercise of ordinary care
before striking them. Therefore, we do not think that the jury
could have been misled under this instruction by this omission,
and consequently the instruction could not have been prejudicial
on account of such omission.

It is contended that the court erred in giving the following
instruction: "If you find from a preponderance of the evidence
that the plaintiff's driver knew, at the time he drove plaintiff's
team to the place and stopped the team where the alleged injury
occurred, that the team of mules were afraid of running trains
and the noise incident thereto when handled with prudence and
care, and knew that the train was likely to pass while he was
there and might frighten and cause his team to run, or try to run
away, and, while there in close proximity to defendant's railway
line, observed the train approaching in time to have moved his
team out to a place of more safety, but remained at the place,
intending to watch and hold the team while the train passed by,
and did hold them until the train was passing by, and as the
train was passing by the team became so frightened that they
backed, threw or ran the wagon into the passing train, then
plaintiff would be guilty of contributory negligence and cannot
recover in this action."

We do not think that there was any error committed by the
court in giving this instruction. Without detailing the testimony,
we think that there was some testimony from which the jury
were warranted in finding that the driver had an opportunity,
after he had seen the train and had gone to the mules, to have
moved the team to safety away from the railroad track, but that
he thought he could hold the team, and did attempt to hold the

team, at the place where they were standing. It is the duty of one, either in approaching or in standing near to a railroad track, to keep his team in hand so as to control it on the approach of a train; and if he leaves them standing in such close proximity to a railroad track at a time when he knows trains are likely to pass, or are passing, and afterwards, when they become frightened, attempts to control them, but is unable to do so, and injury is caused thereby, he will be guilty of negligence barring him from a recovery unless the animals are frightened by some wanton or wilful act done on the part of the servants of the railroad company. *Moore* v. *Kansas City & I. Rapid Transit Ry. Co.*, 126 Mo. 265; 33 Cyc. 1155.

A railroad company is not liable because animals which are left in close proximity to a railroad track where trains are likely to pass are frightened merely by the approach of the trains, where there is no negligence in the operation thereof, or in the failure to exercise due care to avoid the injury. A railroad company has the right to use and operate its trains in the usual and ordinary manner, which includes the right to make all noises incident to the proper handling of its engines; and if it is not operating its train in a negligent manner, it would not be liable because a team left standing in close proximity to the track was frightened by the train. In such event a railroad company would only be liable, after the discovery of the fright and danger of the animal, in failing to exercise ordinary care to avoid injury. *Choctaw, O. & G. Ry. Co.* v. *Coker*, 77 Ark. 174.

There are other errors which counsel for plaintiff urges the court committed in giving and refusing other instructions, but we do not think it necessary to note them in detail. The issues involved in this case were submitted to the jury under instructions which were not prejudicial, and those issues involved questions of fact which it was the province of the jury to determine. Upon those questions of fact there was sufficient evidence adduced upon the trial of the case to sustain the verdict of the jury. Under these circumstances, the verdict should not be disturbed.

Finding no prejudicial errors in the trial of this case, the judgment must be affirmed.